Johnston, Judge.
The judgment pleaded as a set-off being founded on a cause of action which arose subsequent to the alignment by Samuel Campbell of his interest in the copartnership of Hogg and Campbell to James Hogg, cannot operate to discharge a debt due from the defendant to Hogg: and Campbell, which debt, appears to have *12 been comprehended in the assignment. I am therefore of the opinion, that judgment should be entered for the plaintiff.
Taylor, Judge.
The question for the opinion of the court is, whether this judgment recovered by the defendant in the year 1789, can be set off in this action, which is founded on a bond to which the plaintiffs acquired an equitable title in 1780, and a legal one in 1786. As to the effect of the assignment unaided by the act of Assembly, I cannot subscribe to the argument which asserts that it is a mere nullity, and therefore to be entirely disregarded in a court of law. The common law rule which for the purpose of avoiding maintenance, prohibits the assignment of a chose in action, doth not, by its original meaning and spirit, require, nor hath the practical application of it justified, a construction so minutely rigorous. If a chose action is assigned for lawful cause, as for a just debt, it is to some purposes valid even at law. If the lawful cause is wanting, it is neither good in law or in equity. Bro. Abr. pl. 3. If one assign a bond over, though it be not in its nature assignable, yet it is a good agreement that the assignee shall have the money to his own use. 12 Mod. 554. In the same case, there will be found an instance of a master’s assigning an apprentice-bond to another, the contract for which was held good between themselves. An assignment of a chose in action has been held a good consideration for a promise, 2 Bl. Rep. 820. And the power of assignment has, for the convenience of commerce, been extended to respondentia-bonds Ibid, 1272. The case of Wench against Kaly, 1 Term Rep. 619, and the others therein referred to, shew how far, and under what circumstances, a court of law has recognized the real, though not the nominal parties to the suit, and *13 protect their interest, whenever they were made known in a proper manner. All these cases serve to shew, that regard his been paid to such transactions, to a certain degree at least.
But the case of Deering vs. Carrington, 12 W. 3. B. R. proceeds to a still greater length in the protection of such rights. “Where a bond is as-“signed over wish a letter of attorney therein to “sue, and a covenant therein not to revoke, but “that the money should come to the use of the “assignee, although the assignee be dead, yet the “court will not stay proceedings in a suit upon a “bond in the obligee's administrator’s name, tho “prosecuted without his consent, for that those as-“signments to receive the money to the assignee’s “own use, with covenants not to revoke, and also “with a letter of attorney in them, although they “do not vest an interest, yet have so far prevailed “in all courts, that the grantee hath such an inte-“rest, that he may sue in the name of the party, “his executors and administrators,” It seems to me, that on the authority of this case, a court of law might take notice of such an assignment as is there described, as to all purposes except suing in the name of the assignee: For if he may use the name of the obligee, and even of his representatives after his death, against their consent, and prosecute the suit to judgment, notwithstanding any attempt on their part to stay the proceedings. If he may do these things, ought his right to be defeated by a release given to them, or payments made after notice of the alignment, or by any supervenient claim against the obligee?
The great change which has taken place in the contracts of men, from the improved state of society and the increase of commerce; the desire of *14 giving facility to these transactions by which the circulation of a great proportion of the wealth of the country is promoted, and the superior estimation in which personal property is now held from what it formerly was, have contributed gradually to relax the rule from the rigour in which ancient writers have laid it down, as far as it respects personality. Indeed the rule itself contemplates a distinction between a chose in action real, and a chose in action personal; for Broke, after stating an instance wherein a chose in action personal may be assigned, proceeds thus: "But a chose in action “real, as entry he cannot grant over, and it is not “like to a chose in action personal or mixed, as “debt, &c.” Hard. pl. 14. I am aware, and candour induces me to state, that many of the decisions I have referred to, have been considered by an able judge as usurpations of a Court of Equity. Bauerman vs. Radenius, 7 Term Rep. 666. To this opinion I must oppose the observations of another able Judge, in Maske vs. Miller, 4 Term Rep. 340, the practice of this country (in respect of which I will state two cases in addition to those formerly mentioned; one was the case of Fleming vs. Theames, tried at Fayetteville, in which I was counsel: It was an action of covenant brought upon an agreement for the delivery of specific articles, the interest in the paper was fairly assigned to a third person, and a memorandum to that effect was endorsed upon the writ. Before the trial, a release was executed by Fleming to Theames, who attempted to avail himself of it, but the court, without hesitation, rejected it. The other, - vs. Wilkinson, was tried before Judge Haywood and myself at Halifax October term, 1799; the circumstances of which were nearly similar): And lastly, though with less confidence, my own opinion, that it is conformable to a correct, though liberal interpretation of the law.
*15 If justice can be attained in a court of law, without violating the fundamental maxims upon which it proceeds, the parties ought not to be turned aside by refinements merely technical. What has been so often and so beneficially done, may safely be followed; and the security of men’s rights requires that it should be, if upon examination it does not militate with those established principles which it is our duty to preserve.
2dly. But the Legislature in 1786, confirmed what the parties had done in 1780, and added the only circumstance it required to give it complete legal validity, the right of suing in the name of the assignee. The act does not profess to interfere with the rights of third persons; nor ought it to receive a construction that will in the least degree impair them. Whatever claim then existed against Campbell, in the shape of legal sets-off, were preserved to his debtors, who, if they might have enforced them against him at the period of the assignment, may also, as I conceive, against his assignees. This is a fair construction of an act of Assembly authorising an assignment for a particular purpose. Even in negociable instruments, if endorsed after they become due, the law is different on account of the general quality of negociability conferred on them by statute. But what were the rights of the defendant when the assignment was confirmed? They were altogether vague and indeterminate, possessing no legal existence, and manifestly incapable of forming the subject of a set-off. Until judgment was rendered for the damages assessed by the jury, the defendant had no claim for any specific sum; in legal consideration, his right was not merely defined, but acquired by suit and judgment; and when this took place, Campbell was no longer his creditor.
*16 It is worthy of remark, that the preamble of the act states that the assignment was made to James Hogg, one of the executors and devisees of Robert Hogg, for a good and valuable consideration; and the inconvenience sought to be remedied, is the disability of the executors of Robert Hogg to recover the partnership debts, and thereby to carry the will of Robert into execution, and pay his just debts, These two circumstances strongly indicate, that Robert Hogg was substantially, as well as formally entitled to all the partnership rights, and that the recoveries authorised by the purview, were to be applied according to the direction of his will. But however this may be, it is clear that the act gives them a right to recover all that Campbell himself was entitled to at that time: More than this would be derogatory to the rights of others, not parties to the act, and therefore unjust; Less than this, would be to leave the rights of the assignees at the mercy of Campbell, who, if he could rightfully charge them with a shilling after the act assignment, either by his torteous acts or by contracting debts, might incumber the property assigned to the full extent of its value, and thus render the act of Assembly nugatory. For these reasons, I think the plaintiff should have judgment.
Macay, Judge.
I am of opinion, that the bond declared on, is within the description of those debts which James Hogg, the plaintiff, is entitled to sue for, under the act of 1786, and is also within the description of those debts assigned by Samuel Campbell to James Hogg by the deed of assignment recited in the declaration, and for the reasons given, the judgment obtained by the defendant against Campbell, cannot be admitted as a set-off.
Judgment for plaintiff.